# 23-7840

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆

DOCTOR NADER KREIT,

*Plaintiff-Appellant,*

—against—

BYBLOS BANK S.A.L.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE

SAMANTHA L. CHAIFETZ
DLA PIPER LLP (US)
500 8th Street, N.W., Suite 5023
Washington, DC 20004
(202) 799-4082

NEAL F. KRONLEY
CALEB B. ROCHE
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

*Attorneys for Defendant-Appellee*

June 3, 2024

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Defendant-Appellee

Byblos Bank S.A.L. certifies that no publicly held company owns ten percent or

more of its shares.

Dated: June 3, 2024          **DLA PIPER LLP (US)**

         */s/ Samantha L. Chaifetz*
         Samantha L. Chaifetz
         500 Eighth Street, NW
         Washington, DC 20004
         T: 202.799.4082
         F: 202.799.5082

         *Counsel for Defendant-Appellee Byblos Bank*
         *S.A.L.*

# TABLE OF CONTENTS

**Page(s)**

CORPORATE DISCLOSURE STATEMENT ...........................................................i

INTRODUCTION ...................................................................................................1

STATEMENT OF JURISDICTION........................................................................3

STATEMENT OF THE ISSUES.............................................................................3

STATEMENT OF THE CASE.................................................................................4

      A.    Factual Background...................................................................................4

           1.    The Parties..............................................................................4

           2.    The Parties' Banking Activity ................................................5

           3.    Related Cases in Lebanon ......................................................7

      B.    Prior Proceedings ...................................................................................7

SUMMARY OF ARGUMENT ................................................................................9

STANDARD OF REVIEW ...................................................................................14

ARGUMENT .........................................................................................................14

I.    The District Court Correctly Held That Byblos Is Not Subject to
Personal Jurisdiction in New York...............................................................14

      A.    Byblos Is Not Subject to Jurisdiction Under New York's Long-
Arm Statute............................................................................................15

      B.    The Exercise of Jurisdiction Does Not Comport with Due
Process...................................................................................................23

II.   *Forum Non Conveniens* Provides an Independent Basis for Dismissal........27

      A.    The Parties' Mandatory Forum-Selection Clause Requires
Dismissal as a Matter of Law................................................................27

      B.    The Traditional Factors Support Dismissal.........................................28

III.    The District Court Did Not Abuse its Discretion by Denying Jurisdictional Discovery. ..................................................................30

CONCLUSION .........................................................................................37

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aenergy, S.A. v. Republic of Angola*,
　31 F.4th 119 (2d Cir. 2022), ..............................................................28

*AJ Energy LLC v. Woori Bank*,
　829 F. App'x 533 (2d Cir. 2020) .......................................................20

*AlbaniaBEG Ambient Sh.p.k. v. Enel S.P.A.*,
　160 A.D.3d 93 (1st Dep't 2018) ........................................................26

*Alfadda v. Fenn*,
　159 F.3d 41 (2d Cir. 1998) ................................................................30

*Allojet PLC v. Vantage Assocs.*,
　2005 WL 612848 (S.D.N.Y. Mar. 15, 2005).....................................32

*Allstate Life Ins. Co. v. Linter Grp. Ltd.*,
　994 F.2d 996 (2d Cir. 1993) ..............................................................30

*Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. Of Tex.*,
　571 U.S. 49 (2013)..............................................................................27

*Ayyash v. Bank Al-Madina*,
　2006 WL 587342 (S.D.N.Y. Mar. 9, 2006).......................................32

*Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*,
　667 F. Supp. 3d 83 (S.D.N.Y. 2023) .................................................33

*Best Van Lines, Inc. v. Walker*,
　490 F.3d 239 (2d Cir. 2007) ..............................................................30

*Black v. Dain*,
　2018 WL 11447342 (E.D.N.Y. Sept. 17, 2018) ................................21

*Booking v. Gen. Star Mgmt. Co.*,
　254 F.3d 414 (2d Cir. 2001) ..............................................................27

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*,
　582 U.S. 255 (2017)............................................................................26

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985).................................................................23, 24

*Byblos Bank Eur., S.A. v. Sekerbank Turk Anonym Syrketi*,
40 A.D.3d 497 (1st Dep't 2007) ...........................................35

*Carlström v. Livförsäkring*,
2020 WL 7342753 (S.D.N.Y. Dec. 14, 2020) ........................30

*Chaar v. Arab Bank P.L.C.*,
220 A.D.3d 479 (1st Dep't 2023) ...................................*passim*

*Chaar v. Arab Bank, PLC*,
2022 WL 3104606 (Sup. Ct. N.Y. Cnty. Aug. 3, 2022)...........24

*Chirag v. MT Marida Marguerite Schiffahrts*,
604 F. App'x 16 (2d Cir. 2015) ...........................................31

*Chloé v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010) ...........................................23, 25

*Daou v. BLC Bank, S.A.L.*,
2021 WL 1338772 (S.D.N.Y. Apr. 9, 2021) ........................26

*Daou v. BLC Bank, S.A.L.*,
42 F.4th 120 (2d Cir. 2022) .............................................*passim*

*DeBlasio v. Merrill Lynch & Co.*,
2009 WL 2242605 (S.D.N.Y. July 27, 2009)........................20

*Du Quenoy v. Am. Univ. of Beirut*,
828 F. App'x 769 (2d Cir. 2020) ...........................................29

*El Omari v. Int'l Crim. Police Org.*,
35 F.4th 83 (2d Cir. 2022) ....................................................14

*Elghossain v. Bank Audi S.A.L.*,
2023 WL 6390160 (S.D.N.Y. Sept. 29, 2023) ...................*passim*

*In re Fosamax Prods. Liability Litig.*,
2009 WL 3398930 (S.D.N.Y Oct. 21, 2009)........................28

*Francisco v. Abengoa, S.A.*,
  559 F. Supp. 3d 286 (S.D.N.Y. 2021) .................................................. 7

*Girl Scouts of U.S. v. Steir*,
  102 F. App'x 217 (2d Cir. 2004) .......................................................... 32

*Goodyear Dunlop Tires Operations S.A. v. Brown*,
  564 U.S. 915 (2011)................................................................................ 23

*Haber v. United States*,
  823 F.3d 746 (2d Cir. 2016) ................................................................ 13

*Holmes v. Apple Inc.*,
  797 F. App'x 557 (2d Cir. 2019) ......................................................... 33

*Jazini v. Nissan Motor Co.*,
  148 F.3d 181 (2d Cir. 1998) .......................................................... 21, 32

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave
  Achille Lauro in Ammistrazione Straordinaria*,
  937 F.2d 44 (2d Cir. 1991) ................................................................... 21

*LaSala v. UBS, AG*,
  510 F. Supp. 2d 213 (S.D.N.Y. 2007) ............................................... 29

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
  676 F.3d 83 (2d Cir. 2012) ..................................................................... 7

*Malaeb v. Bankmed S.A.L.*,
  2021 WL 1925638 (N.Y. Sup. Ct. May 13, 2021) .......................... 19, 25, 26, 27

*Martinez v. Bloomberg LP*,
  740 F.3d 211 (2d Cir. 2014) ................................................................. 28

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996) ................................................................... 25

*Mitsubishi UFJ Inv. Servs. & Banking (Luxembourg) S.A. v. Byblos
  Bank S.A.L.*,
  No. 653915/2022 (Sup. Ct. N.Y. Cnty. Dec. 27, 2022) .................... 36

*Moussaoui v. Bank of Beirut & the Arab Countries*,
  2023 WL 5977239 (S.D.N.Y. Sept. 14, 2023) ...................... 18, 30, 34

*Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. UPS Supply Chain Sols., Inc.*,
74 F.4th 66 (2d Cir. 2023) ........................................................................14

*Piper Aircraft Co. v Reyno*,
454 U.S. 235 (1981)..................................................................................29

*Raad v. Bank Audi S.A.L.*,
2024 WL 967172 (S.D.N.Y. Mar. 5, 2024)..............................................18

*Reed Int'l, Inc. v. Afghanistan Int'l Bank*,
657 F. Supp. 3d 287 (S.D.N.Y. 2023) ........................................31, 32, 33

*Shin-Etsu Chem. Co., v. 3033 ICICI Bank Ltd.*,
9 A.D.3d 171 (1st Dep't 2004) .................................................................30

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*,
482 U.S. 522 (1987)..................................................................................32

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
750 F.3d 221 (2d Cir. 2014) .....................................................................15

*Stratagem Dev. Corp. v. Heron Int'l N.V.*,
153 F.R.D. 535 (S.D.N.Y. 1994) ..............................................................32

*Trans Atlantic Imaging S.A.L. v. Banque MISR Liban S.A.L.*,
2021 WL 2435887 (Sup. Ct. N.Y. Cnty. June 15, 2021) ...................16, 26

*V&A Collection, LLC v. Guzzini Props., Ltd.*,
2021 WL 982461 (S.D.N.Y. Mar. 15, 2021), *aff'd*, 46 F.4th 127 (2d Cir. 2022)...........................................................................................35

*Wells Fargo Advisors, LLC v. Sappington*,
884 F.3d 392 (2d Cir. 2018) .....................................................................23

*Williams v. Beemiller, Inc.*,
33 N.Y.3d 523 (2019)................................................................................15

*World-Wide Volkswagen Corp. v Woodson*,
444 US 286 (1980)....................................................................................24

**Statutes & Other Authorities**

28 U.S.C. § 1291 .................................................................................3, 4

28 U.S.C. § 1332 ....................................................................................3

N.Y.C.P.L.R. § 302 ....................................................................12, 15, 16

# INTRODUCTION

In 2012, Plaintiff-Appellant Dr. Nader Kreit ("Kreit" or "Plaintiff"), a Texas resident, opened accounts with Byblos Bank, S.A.L. ("Byblos" or "Defendant"), a Lebanese bank, to take advantage of high interest rates being offered in Lebanon. Beginning in 2019, a major financial crisis hit Lebanon, leading banks there—including Byblos—to restrict the international transfer of funds. Kreit, unable to transfer his funds as he desired, brought suits against Byblos in Lebanon and then here in New York, despite his claims having no connections to this forum.

The district court properly dismissed Kreit's suit for lack of personal jurisdiction over Byblos. As the court explained, Kreit's allegations are "indistinguishable" from those this Court found insufficient to establish personal jurisdiction in *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120 (2d Cir. 2022). Indeed, Kreit joins a long list of litigants whose attempts to hale Lebanese courts into New York courts have been rejected because they erroneously sought to rely on New York correspondent banking transactions that were "merely coincidental" and lacked a "nexus" to their claims. *See infra* p. 18 (citing cases dismissed following *Daou*).

As this Court has recognized, such transactions do not provide the jurisdictional hook necessary to satisfy New York's long-arm statute. Here, as in *Daou*, Byblos's alleged use of New York correspondent bank accounts was *not* tied to Plaintiff's claims that the bank unlawfully refused him proper access to his funds.

*Daou*, 42 F.4th at 132. Because there is no nexus between Kreit's claims and any alleged correspondent banking transaction, the district court properly found New York's long-arm statute unsatisfied.

In light of this, the district court did not have occasion to consider Byblos's other arguments warranting dismissal—including (1) that the exercise of jurisdiction over the foreign bank does not comport with the Due Process Clause of the U.S. Constitution, and (2) that the doctrine of *forum non conveniens* supplies an independent basis for dismissal, particularly in light of the parties' agreement to litigate in Lebanon.

On appeal, Kreit does not seriously dispute the district court's analysis under New York law. Instead, Kreit urges this Court to reject the district court's ruling as "premature" and to overturn the court's ruling regarding jurisdictional discovery. But the district court's ruling was in no sense premature; it followed briefing and argument of an attachment order and full briefing of a motion to dismiss. Moreover, the district court was well within its discretion to deny Kreit's request for discovery. He not only failed to make a *prima facie* showing, but he failed to demonstrate that discovery would be anything more than a fishing expedition. As the court explained, Kreit could not show that the discovery he sought would resolve any material questions of jurisdictional fact. This Court should affirm.

2

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction under 28 U.S.C. § 1332. On October 22, 2023, the district court granted the Defendant's motion to dismiss, A226.[1] On October 23, 2023, the district court entered final judgment. A8. Plaintiff timely noticed his appeal. A241. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.    Whether the district court properly dismissed for lack of personal jurisdiction where Plaintiff failed to make a *prima facie* showing under New York law, and, alternatively, where the exercise of jurisdiction does not comport with constitutional due process.

2.    Whether *forum non conveniens* provides an alternate ground for dismissal where the parties have agreed that courts in Lebanon have exclusive or sole jurisdiction, where none of the parties are New York residents, the dispute arose in Lebanon, and adjudicating the merits implicates issues of public significance in Lebanon.

3.    Whether the district court properly exercised its discretion to deny jurisdictional discovery where Plaintiff failed to make a *prima facie* showing and

---

[1] Citations to "A_" refer to the appendix filed by the Plaintiff-Appellant. Citations to "SA_" refer to the supplemental appendix filed by the Defendant-Appellee.

failed to establish that his requested discovery would resolve a material issue of jurisdictional fact.

## STATEMENT OF THE CASE

Dr. Kreit, a Texas resident, brought this suit in the Southern District of New York against Byblos. Kreit holds wealth management accounts at Byblos in Lebanon. District Judge Lewis Liman granted Byblos's motion to dismiss for lack of personal jurisdiction and denied Kreit's request for jurisdictional discovery. A226-A239; *see* A240 (order dismissing the complaint without prejudice). Kreit appeals that order, which is not reported in a published opinion.

### A.    Factual Background

#### 1.    The Parties

Plaintiff-appellant Kreit is a dual Syrian-U.S. national who resides in Texas. A227; A12 ¶ 18. Defendant-appellee Byblos is a commercial bank in Lebanon. A227; SA28 ¶ 5. Byblos does not—and is not licensed to—conduct business in New York or anywhere else in the United States. *Id.* at ¶ 7. Byblos does not have any agents, employees, representatives, branches, or offices in New York. *Id.* Byblos maintains correspondent accounts at banks around the world, including in New York. SA28 ¶ 8.[2]

---

[2] Correspondent banking refers to the common practice of financial institutions maintaining accounts at banks in other countries to facilitate foreign currency transactions. SA28 ¶ 7. Correspondent accounts are not customer or transaction

### 2. The Parties' Banking Activity

In December 2012, Kreit traveled to Lebanon and opened wealth management accounts with Byblos at the "Kaslik Branch No. 5351." A13 ¶¶ 21-22; *see* SA29 ¶ 10. He deposited funds in multiple currencies (U.S. dollars, euros, and Lebanese pounds) into his accounts. A13 ¶¶ 21-22; *see* A227. He allegedly did so because he was drawn to "the highly attractive interest rates" available in Lebanon at that time. A199.

Kreit executed account opening documents with Byblos and accepted the contractual terms and conditions. See A13 ¶ 22; SA29-SA30 ¶¶ 9-13. The terms and conditions Kreit agreed to when he opened the accounts incorporate (1) a forum-selection clause designating the Beirut courts as the exclusive forum for Kreit's claims against Byblos, and (2) a choice of law provision identifying Lebanese law as the law governing the parties' obligations and relationship. SA29-SA30 ¶ 12; SA34-SA92.

Kreit alleges that, between 2012 and 2018, he transferred large amounts of money from his Wells Fargo Bank account to Byblos in Lebanon, including more than $4.8 million allegedly transferred between "November 13, 2015, and July 5,

---

specific. *Id.*; *see* A228 ("A correspondent bank account is a domestic bank account held by a foreign bank, similar to a personal checking account used for deposits, payments and transfers of funds. Correspondent accounts facilitate the flow of money worldwide, often for transactions that otherwise have no connection to New York.") (citation omitted).

2018." A13 ¶¶ 25-26. As the district court noted, Kreit contends that the transfers from Wells Fargo are likely to have traveled through one of Byblos's correspondent banks in New York before arriving to Kreit's account at Byblos in Lebanon. A233-A234; A185-A186 ¶ 13.

Starting in 2019, a financial crisis developed in Lebanon. A227; A15 ¶ 42. As this Court has explained, "the Lebanese banking sector tried desperately to prevent a run on the banks, first by temporarily closing the country's banks, and then by making it nearly impossible to remove large quantities of USD from the country." *Daou*, 42 F.4th at 126.

In late 2019, after the onset of the crisis, Kreit requested that Byblos transfer "his funds back to a US bank account," including one specific instance when he allegedly requested that over 2.1 million Euros be transferred to his account in the United States. A14 ¶ 31-32. Byblos declined Kreit's transfer requests. A14 ¶ 33.

Kreit further alleges that he "demanded on multiple occasions that Defendant close his identifiable accounts and return the money contained within." A19 ¶ 76. Byblos complied with this request, and in August 2022, "invited" Kreit to "appear in the bank branch located in Kaslik to receive bank cheques made for [Kreit's] order, which represent balances of these accounts." A60. Because Kreit did not appear to accept the checks in Kaslik, they were transferred to a Notary Public in Beirut on or around September 29, 2022. A61; SA33 ¶ 24.

6

### 3.    Related Cases in Lebanon

In July 2022, Kreit filed an "emergency lawsuit in Lebanon" asking the Judge of Urgent Matters of Beirut to mandate that Byblos effectuate a requested transfer of funds to the United States ("July 2022 Action"). *See* Case No. 350/2022 (Court of Urgent Matters, Beirut); A14 ¶ 34. In November 2022, Kreit commenced another suit in Beirut, seeking to require Byblos to reopen his accounts ("November 2022 Action"). SA33 ¶ 25.[3] Following the transfer of Kreit's checks to the Notary Public, Byblos submitted a claim on December 28, 2022 in the Commercial Court of Beirut to confirm and validate the transfer of the checks to the Notary Public ("December 2022 Action"). SA33 ¶ 24.

### B.    Prior Proceedings

In December 2022, Kreit initiated this case by filing his complaint and, three days later, filing an *ex parte* motion for a writ of attachment over funds in Byblos's

---

[3] In 2023, Kreit initiated another proceeding before the Judge of Urgent Matters of Beirut seeking reopening of his accounts, but those claims were rejected as duplicative of the pending November 2022 Action. *See* Order of Feb. 8, 2023, Case No. 776/2023 (Court of Urgent Matters, Beirut). A hearing is currently scheduled in the November 2022 Action for October 31, 2024. *See* Case No. 1728/2022 (Court of First Instance, Beirut). Most recently, the Court of Urgent Matters presiding over the July 2022 Action requested that Kreit submit evidence of the status of the November 2022 Action and December 2022 Action and set a hearing for October 7, 2024. *See* Order of May 22, 2024, Case No. 350/2022 (Court of Urgent Matters, Beirut). *Cf. Louis Vuitton Malletier S.A. v. LY USA, Inc.,* 676 F.3d 83, 88 (2d Cir. 2012); *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 323 n. 4 (S.D.N.Y. 2021) (taking judicial notice of "developments" of related proceedings in Spanish courts).

alleged New York correspondent accounts. ECF Nos. 1, 6, 9. As the district court later noted, "[t]he sole basis for jurisdiction then asserted by Plaintiff was on a *quasi in rem* theory." A229. Kreit expressly admitted that he "does not have *in personam* jurisdiction over the foreign Banks" and that the "complaint does not seek *in personam* jurisdiction over Byblos Bank." ECF No. 9-1 at 6, 10.

Following oral argument, the district court denied Kreit's attachment motion, finding that the court lacked grounds for exercising *quasi in rem* jurisdiction and explaining that "[i]f there's no personal jurisdiction, then there's no likelihood of success." A88 at 18:12-17; *see also* A69. The district court later explained that "[t]wo independent reasons animated" its jurisdictional analysis. A229. First, "Plaintiff had not established that there was any relationship between his causes of action and Defendant's New York-based correspondent bank accounts." *Id.* Second, "even assuming that money that Plaintiff sent to Defendant passed through New York-based correspondent accounts, he failed to allege a relationship between his claims and the accounts at issue." *Id.*

Shortly after the district court denied Kreit's motion for a writ of attachment, Kreit requested reconsideration and sought "limited pretrial discovery." ECF No. 29. The district court rejected both requests. *See* ECF No. 31.

8

Byblos moved to dismiss Kreit's complaint for lack of personal jurisdiction, *forum non conveniens*, and failure to state a claim. A97.[4] Before responding to Byblos's motion, Kreit filed a letter motion seeking jurisdictional discovery. A140. The district court denied that motion without prejudice, explaining that the court would consider any request for jurisdictional discovery in connection with Kreit's opposition to the motion to dismiss. A7. Kreit later reiterated his request for jurisdictional discovery in his opposition to the motion. A167.

In October 2023, the district court granted Byblos's motion to dismiss based on lack of personal jurisdiction, A240, and, accordingly, the court "h[ad] no occasion to address the remainder of Defendant's arguments" for dismissal. A239. The district court denied Kreit's request for jurisdictional discovery on the grounds that he "ha[d] 'not made a *prima facie* showing that the district court could properly exercise jurisdiction over' Defendant and ha[d] failed to establish a genuine issue of jurisdictional fact." A239 (quoting *Daou*, 42 F.4th at 133 n.6).

## SUMMARY OF ARGUMENT

Starting in 2019, in response to Lebanon's deepening banking crisis, Lebanese banks agreed to implement measures to stop a run on the banks, including

---

[4] Plaintiff refiled their original complaint with attachments in January 2023. A10 The text of the refiled complaint was identical to the original complaint; it remained dated December 2022; and it was treated as the original complaint. *See, e.g.*, A109 (citing refiled complaint).

restrictions on the transfer of U.S. dollars and Euros out of Lebanon. Kreit demanded that Byblos transfer his funds out of Lebanon to his accounts in the United States. Byblos declined Kreit's requests to transfer. After Kreit repeatedly requested that his accounts be closed, Byblos ultimately did so—closing Kreit's accounts and tendering bank checks for Kreit's full outstanding balances. Kreit responded by filing suits in Lebanon seeking to require Byblos to reopen the closed accounts, recredit the balances, and effectuate the requested transfer. And he initiated this lawsuit in the Southern District of New York, asking the court to order Byblos to transfer the funds previously held in Kreit's now-closed account from Lebanon to the United States.

**I.**     The district court properly dismissed this suit for want of personal jurisdiction in accordance with this Court's ruling in *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120 (2d Cir. 2022). On appeal, Kreit contends that his claims are "distinct from *Daou*." Plaintiff-Appellant's Br. ("Pl's Br.") 2. They are not. As the district court correctly observed, *Daou* "involved nearly identical facts" and is "controlling." A234.

In *Daou*, as here, the plaintiffs alleged that their U.S. dollars had been transmitted through correspondent accounts in New York and then that, amid the Lebanese financial crisis, the bank defendants refused to transfer the plaintiffs' funds from Lebanon to the United States. This Court found those allegations insufficient

to establish personal jurisdiction. The Court explained that correspondent banking activity does not support jurisdiction over a Lebanese bank defendant unless the plaintiff's alleged *injury* is related to specific transfers through New York accounts. *Daou*, 42 F.4th at 131-32.

As in *Daou*, Kreit does not, and cannot, connect his alleged injury to correspondent banking transfers. His inability to transfer his funds out of Lebanon into the United States is not tied to Byblos's maintenance of correspondent bank accounts in the United States. That is, Byblos's alleged use of correspondent bank accounts in the United States is "merely coincidental." A239 (quoting *Daou*, 42 F.4th at 132). Indeed, the district court correctly recognized that Kreit's claimed injuries arise from alleged bank conduct which "all occurred in Lebanon"—namely, the rejection of Kreit's request to transfer funds (including millions in Euros) to his accounts in the United States, the closure of Kreit's accounts following his requests, and the issuance of checks in Lebanese pounds to Kreit for the account balance. A239.

Kreit incorrectly suggests that his case can be distinguished from *Daou* and others—asserting, without any basis, that his funds "remain in New York" and are being used to fund various bank "activities." Pl's Br. 14. Not only are these allegations wholly unsubstantiated and contrary to the record on personal jurisdiction, they also fail to distinguish Kreit's case. Others have advanced similar

allegations against Lebanese bank defendants, and courts have consistently recognized that speculation unconnected to the substantive claims being litigated cannot support the exercise of personal jurisdiction.

Furthermore, while the district court did not have occasion to decide the issue because it dismissed the case under New York's long-arm jurisdiction statute, N.Y. C.P.L.R. 302(a)(1), Kreit's allegations also fail to comport with the Due Process Clause of the U.S. Constitution. This Court should, therefore, affirm dismissal for lack of personal jurisdiction.

**II.** Even if this Court could exercise personal jurisdiction over Byblos (and it cannot), the doctrine of *forum non conveniens* is an independent basis for dismissal because (1) the parties agreed to the exclusive jurisdiction of the Lebanese courts; and (2) New York is otherwise an improper forum. To start, the contractual terms between Kreit and Byblos provide that any disputes "shall be exclusively referred to the Lebanese competent courts." SA4 ¶ 10. While Kreit contends that a different English translation using the word "solely" instead of "exclusively" is correct, it is a distinction without a difference. *See* A163. The forum selection clause is mandatory and demands dismissal here even though the district court did not have occasion to reach the argument. Furthermore, the other *forum non conveniens* factors uniformly support dismissal.

**III.**    The district court did not abuse its discretion in denying Kreit's request for jurisdictional discovery. This Court recognizes that district courts have broad discretion to manage discovery, and authorizes them to deny jurisdictional discovery where, as here, a plaintiff fails to make out a *prima facie* case for jurisdiction. *See, e.g.*, *Daou*, 42 F.4th at 133 n.6 (citing *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 401 (2d Cir. 2009)).

Kreit argues that the district court was nonetheless required to allow him discovery because he made a "sufficient start" toward such a showing. Pl's Br. 7. Kreit has not demonstrated a "sufficient start," however; notably, he has failed to demonstrate that the requested discovery would yield information that would "bear on the critical issue" for jurisdiction. *Haber v. United States*, 823 F.3d 746, 753 (2d Cir. 2016).

As we explain, the discovery Kreit seeks would, at best, demonstrate what is undisputed—that Byblos engaged in New York correspondent banking activities—but that is insufficient as it lacks any "nexus" to the alleged misconduct. *See Daou*, 42 F.4th at 130 (to support long-arm jurisdiction a "transaction made through [a correspondent] account" would need to be "part of the alleged unlawful course of conduct underlying the cause of action set out in the complaint"). The district court correctly recognized that Kreit's requests amount to no more than a fishing expedition and cannot be expected to produce information relevant to the

13

jurisdictional inquiry. For all these reasons, this Court should affirm the district court's exercise of discretion to deny discovery.

## STANDARD OF REVIEW

"In an appeal from a dismissal for lack of personal jurisdiction," this Court reviews "the district court's legal conclusions *de novo* and its factual findings for clear error." *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. UPS Supply Chain Sols., Inc*., 74 F.4th 66, 71 (2d Cir. 2023). The Court reviews "a district court's denial of jurisdictional discovery for abuse of discretion, always mindful that a district court has wide latitude to determine the scope of discovery." *El Omari v. Int'l Crim. Police Org*., 35 F.4th 83, 94 (2d Cir. 2022).

## ARGUMENT

I. **The District Court Correctly Held That Byblos Is Not Subject to Personal Jurisdiction in New York.**

Kreit's jurisdictional appeal is limited to challenging the district court's conclusion that it lacks *in personam* jurisdiction over Byblos. *See, e.g.*, Pl's Br. 13. Notably, this marks a change in position for Kreit: At the outset of this litigation, he informed the district court there was no *in personam* jurisdiction. *See* ECF No. 9-1 at 6, 10 ("Plaintiff does not have *in personam* jurisdiction over the foreign Banks"). Following Byblos's motion to dismiss, the district court reached the same

14

conclusion, holding that "the Court cannot exercise personal jurisdiction over Defendant" under New York's long arm statute. A239. This Court should affirm.[5]

### A. Byblos Is Not Subject to Jurisdiction Under New York's Long-Arm Statute.

To establish *in personam* jurisdiction under New York law, a party must demonstrate that "two requirements are satisfied: the action is permissible under the long-arm statute (N.Y.C.P.L.R. § 302) and the exercise of jurisdiction comports with due process." *Williams v. Beemiller, Inc.*, 33 N.Y.3d 523, 528 (2019); *see also Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (courts first "determine whether the defendant is subject to jurisdiction under the law of the forum state—here, New York").

Under N.Y.C.P.L.R. § 302(a)(1), courts may only "exercise personal jurisdiction over [a] non-domiciliary" that transacts "business within the state" "[a]s to a cause of action arising from" those transactions. Where, as here, a plaintiff premises long-arm jurisdiction on correspondent banking activity, it must allege facts demonstrating both the foreign bank's "purposeful" use of its correspondent

---

[5] Kreit's complaint alleged only *quasi in rem* jurisdiction. In denying his motion for attachment, the district court found that "it did not have personal jurisdiction over Defendant" under the *quasi in rem* inquiry because Kreit "failed to establish the requisite nexus between the forum and the litigation." A229. The district court confirmed this finding as "law of the case" in granting Byblos's motion to dismiss. A232 n.4. Kreit has not challenged this finding on appeal or challenged the district court's rejection of his attachment motion.

account *and* a "nexus or substantial relationship between the claim and use of the correspondent account." *Trans Atlantic Imaging S.A.L. v. Banque MISR Liban S.A.L.*, 2021 WL 2435887, at *2 (Sup. Ct. N.Y. Cnty. June 15, 2021); *see also Daou*, 42 F.4th at 130.

The district court correctly held that Kreit cannot establish N.Y.C.P.L.R. § 302(a)(1)'s second prong—the nexus prong of New York's long-arm statute—because Kreit "failed to show that his claims arose from any correspondent bank transactions." A238. The court accepted Kreit's allegations as true and reasoned that "[a]lthough it may be that the U.S. dollars that Plaintiff transferred to Lebanon were sent there by Defendant's correspondent bank account in New York, and are reflected by an accounting entry as between the correspondent bank and the Lebanese bank . . . [t]hat fact is 'merely coincidental.'" A238-A239. This is because the "harm" alleged by Kreit—including the purported failure to transfer funds to Plaintiff, the claimed conversion of funds from U.S. Dollars or Euros, and hypothetical transfer of funds to, *inter alia*, unnamed "corporate insiders," "high level officials," and "international banks"—"all occurred in Lebanon." A239-A230. In other words, Kreit's allegations of Byblos's purported wrongdoing lack any nexus with correspondent banking activity in New York. *See* A238-A239.

This conclusion follows directly from this Court's ruling in *Daou*, which the district court recognized "involved nearly identical facts to those alleged here and is

controlling." A234. In *Daou*, the plaintiffs sued Lebanese banks for breach of contract and unjust enrichment, alleging the banks unlawfully declined to transfer funds in the plaintiffs' accounts to the United States. 42 F.4th at 125. The plaintiffs, like Kreit here, argued that the banks "advertised the availability of their New York correspondent accounts to potential customers and used those accounts to transfer some of the millions of dollars in the [plaintiffs'] accounts into Lebanon in the first instance[.]" *Id*. at 132. This Court found no long-arm jurisdiction, stressing that the "connection between those past transactions and the claims" was inadequate. *Id*.

The *Daou* Court explained that to support long-arm jurisdiction, a "transaction made through [a correspondent] account" would need to be "part of the alleged unlawful course of conduct underlying the cause of action set out in the complaint." *Id*. at 130. But the plaintiffs did not allege that the banks used any "specific transaction through a New York correspondent account in the course of bringing about the injuries on which the claims are predicated—namely, that [plaintiffs'] USD remained in Lebanon." *Id*. at 132.

As the district court observed, following *Daou*, courts "have not hesitated to dismiss for lack of personal jurisdiction claims against Lebanese banks for their failure to return U.S. dollar deposits to the plaintiff's accounts in the United States where jurisdiction is predicated upon a foreign bank's use of correspondent accounts in New York." A237. Indeed, numerous state and federal cases have "reached the

same results" as *Daou*. A237-238 (discussing and citing cases); *see, e.g.*, *Raad v. Bank Audi S.A.L.*, 2024 WL 967172, at *5-6 (S.D.N.Y. Mar. 5, 2024), appeal pending, No. 24-840 (2d Cir.); *Moussaoui v. Bank of Beirut & the Arab Countries*, 2023 WL 5977239 (S.D.N.Y. Sept. 14, 2023), appeal pending, No. 23-7332 (2d Cir.); *Elghossain v. Bank Audi S.A.L.*, 2023 WL 6390160 (S.D.N.Y. Sept. 29, 2023), adopting report and recommendation, 2023 WL 3005524 (S.D.N.Y. Feb. 23, 2023); *Chaar v. Arab Bank P.L.C.*, 220 A.D.3d 479 (1st Dep't 2023), reargument denied, 2024 WL 677668 (1st Dep't Feb. 20, 2024).

Kreit's attempt on appeal to distinguish *Daou* and its progeny is unavailing. He argues that he is not simply relying on Byblos's use of the correspondent bank accounts in New York, but also on other alleged "activities in New York." Pl's Br. 7. These other allegations fall short for multiple reasons.

***First***, Kreit alleges in conclusory fashion that funds he deposited to his account with Byblos somehow "remain in New York." Pls' Br. 14. That assertion is unwarranted speculation, however—contrary to the record and all plausible inferences.

The only citation Kreit offers is to his putative Lebanese law expert's declaration, which acknowledges Plaintiff "transferred his money to the Lebanese branches of [Byblos,]" A199 ⁋ 17, before hypothesizing that Kreit "could not have possibly *intended* to affect those amounts to Lebanon but rather to his needs in the

US," *id.* (emphasis added). That makes little sense, and, in any event, speculation about Kreit's intent does not alter what actually occurred.

It is undisputed that Kreit opened accounts with Byblos in Lebanon—a bank that does not offer customer accounts in the United States—and deposited funds to those accounts. *See, e.g.*, A13 ¶ 26; SA28-SA29 ¶¶ 7, 10. Kreit does not (and cannot) allege that Byblos ever failed to credit those deposits to his account balances in Lebanon. *See* A13 ¶ 23.

The suggestion that "Kreit's funds remain in New York" (Pls' Br. 14.) contravenes basic principles of international banking. As this Court has recognized, funds *transit* a foreign bank's correspondent account (whether in New York or elsewhere) in furtherance of international transactions and, as happened here, are credited to the account(s) where they belong. *See Daou*, 42 F.4th at 126 (explaining use of "correspondent bank accounts to facilitate the transfer of USD into and out of Lebanon") (citing *Licci ex rel Licci v. Lebanese Canadian Bank, S.A.L.,* 732 F.3d 161, 165 n.3) (2d Cir. 2013)); *see also Malaeb v. Bankmed S.A.L.*, 2021 WL 1925638, at *6 (N.Y. Sup. Ct. May 13, 2021) (detailing how correspondent bank accounts are used to facilitate international transfers). A bank's balance in its correspondent account thus fluctuates daily depending on the volume of transactions, and generally reflects only a tiny fraction of a given bank's USD assets. *See generally* SA28 ¶ 8.

19

In short, there is no basis for Kreit's conjecture that "his funds" were held in the bank's correspondent account for years. To the contrary, Kreit's own putative banking expert explained: "When money was sent to Byblos Bank, an accounting entry in the DDA (Demand Deposit Accounting System) was generated which credited the Byblos Bank account *for further payment into the client's account at the Byblos Bank branch* specified." A186 ¶ 16 (emphasis added).

Kreit makes no effort to reconcile his assertion that his funds "remain in New York" with his claim that he sought to "transfer his funds *back* to a US bank account" and that Byblos improperly converted his funds and issued him checks in Lebanon when it closed his accounts. A14 ¶¶ 31, 36; *see also* A60. These allegations provide the basic premise for Kreit's suit and reflect the fact that Byblos held his accounts in Lebanon—not New York.

The district court was not required to "suspend common sense" in analyzing Kreit's allegations. *AJ Energy LLC v. Woori Bank*, 829 F. App'x 533, 534 (2d Cir. 2020); *see also DeBlasio v. Merrill Lynch & Co.*, 2009 WL 2242605, at *26 (S.D.N.Y. July 27, 2009) (noting that where a "broad contention sits in significant tension with Plaintiffs' other allegations . . . the Court is not obligated to accept it as true"). In short, it is not (and cannot be) seriously disputed that Kreit's funds were, and remain, in Lebanon.

***Second***, the district court properly rejected Kreit's equally conclusory allegations that Byblos "continues to use" his funds in New York for a litany of purposes. Pl's Br. 14-15.[6] This uncabined speculation—which was not part of Kreit's complaint and is wholly unsupported—need not be credited. *See, e.g.*, *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (holding that "conclusory statements—without any supporting facts" were insufficient to establish *prima facie* showing of personal jurisdiction and noting that courts are "not bound to accept as true a legal conclusion couched as a factual allegation") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986).[7]

Moreover, such allegations lack the requisite nexus to Kreit's claims against Byblos for failing to transfer his funds to his U.S. accounts as he desired. Even if Kreit's allegations are credited (and they should not be), there is simply no

---

[6] *See* Pls' Br. 14-15 (asserting, without any stated basis, that Kreit's funds are being used "to bring about money transfers, issue letters of credit, acquire real estate in New York State, trade on the financial exchanges, the purchase and sale of precious metal in New York, advertisements to foreign investors, conducting transactions to provide financial support through correspondent banks to students, and the acquisition of vaccines and medical equipment during the Covid-19 pandemic").

[7] To the extent that Kreit seeks to rely on conduct that allegedly occurred after Kreit filed this suit, it is improper. *See, e.g.*, *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Ammistrazione Straordinaria*, 937 F.2d 44, 52 (2d Cir. 1991) (explaining that "personal jurisdiction depends on the defendant's contacts with the forum state at the time the lawsuit was filed" and cannot be based on events that occurred after the filing of the complaint); *Black v. Dain*, 2018 WL 11447342, at *2-3 (E.D.N.Y. Sept. 17, 2018) (collecting cases).

connection between Byblos's alleged activities in New York and Byblos's refusal to transfer Kreit's funds. For this reason, courts have rejected similar jurisdictional allegations in other cases against Lebanese bank defendants. *See, e.g.*, *Chaar*, 220 A.D.3d at 480 (holding similar allegations—including claims of "real estate acquisitions," "trades on the New York Stock Exchange," "money transfers and letters of credit"—were not "connected to plaintiffs' claims"); *Daou*, 42 F.4th at 132 (allegations that defendant banks "advertised" accounts to potential customers in New York did not aid in establishing jurisdiction); *Elghossain*, 2023 WL 6390160 at *7 (same).

*Third*, Kreit's brief summarizes his claims—namely, that Byblos allegedly breached its banking agreement and violated Lebanese law by issuing Kreit bank checks in Lebanon for the balance of his accounts. Pl's Br. 14. But as discussed above, and as the district court observed, these are allegations of purported misconduct in Lebanon, not New York. A239; *see, e.g.*, A14 ¶ 36, A60. Such allegations do nothing to establish any basis for this Court's exercise of personal jurisdiction. Kreit's restatement of his claims only serves to underscore the absence of any nexus to Byblos's routine correspondent banking.[8]

---

[8] Kreit also seeks to transfer €17,426,165.37 to the U.S. from Lebanon; but "deposits in Euros would under no circumstances use New York correspondent accounts." SA30 ¶ 16.

In sum, Kreit fails to distinguish *Daou* or the line of similar cases that have followed in its wake. The district court correctly held that *Daou* controls and requires dismissal of Kreit's claims.

**B.    The Exercise of Jurisdiction Does Not Comport with Due Process.**

Even if Kreit could satisfy New York's statutory requirements for personal jurisdiction (and he cannot), his suit must be dismissed because the exercise of jurisdiction over Byblos cannot be reconciled with the requirements of constitutional due process. *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). The district court had no reason to reach this argument, but it supplies an independent ground for affirming the district court's decision. *See, e.g.*, *Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 396 n.2 (2d Cir. 2018) (noting this Court is "free to affirm on any ground that finds support in the record, even if it was not the ground upon which the trial court relied") (citation omitted).

Because there is no basis for general jurisdiction here, the due process analysis is case-specific, requiring a connection between the defendant's minimum contacts with the forum and the claim brought. *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 919 (2011). If minimum contacts are found, the court further considers "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

23

As relevant here, Kreit must show that this suit "results from alleged injuries that 'arise out of or relate to'" Byblos's purposeful contacts with New York, *Burger King Corp*, 471 U.S. at 472, and that, given those contacts, Byblos would "reasonably anticipate being haled into court" in New York in this case. *World-Wide Volkswagen Corp. v Woodson*, 444 US 286, 291, 297 (1980). Kreit, however, cannot satisfy any part of the due process analysis.

Byblos's alleged conduct giving rise to Plaintiff's asserted injuries occurred in Lebanon, and its routine correspondent banking in New York is incidental to—rather than "related to"—the litigation. Likewise in *Chaar v. Arab Bank, PLC*, 220 A.D.3d at 480, the plaintiffs alleged the Lebanese bank defendants improperly converted or fraudulently transferred their funds. The trial court in New York concluded that the plaintiffs' allegations that their funds and "investment returns" were routed through the Lebanese banks' New York correspondent accounts were "insufficient to establish the relationship" necessary for jurisdiction. *Chaar v. Arab Bank, PLC*, 2022 WL 3104606, at *3-4 (Sup. Ct. N.Y. Cnty. Aug. 3, 2022), reargument denied, 2022 WL 3340008 (Sup. Ct. N.Y. Cnty. Aug. 10, 2022). The Appellate Division's First Department affirmed unanimously, explaining that "mere maintenance of a correspondent bank account in New York does not suffice to establish personal jurisdiction there." 220 A.D.3d at 480 (quoting *Licci v. Lebanese*

24

*Canadian Bank*, 673 F.3d 50, 65 (2d Cir. 2012)), reargument denied, 2024 WL 677668 (1st Dep't Feb. 20, 2024).

Moreover, Kreit must show imposing jurisdiction over Byblos "comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable to exercise . . . jurisdiction under the circumstances of the particular case." *Chloé*, 616 F.3d at 164 (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)). "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996) (internal quotations and citations omitted).

Here, Byblos had no reason to foresee being compelled to litigate this matter in New York courts. It does not—and is not licensed to—conduct business in New York or anywhere else in the United States. SPA28 ¶ 7 (noting the absence of agents, employees, representatives, branches, or offices in New York). Furthermore, it opened Kreit's accounts in Lebanon under an express agreement that it would be governed by Lebanese law and that Kreit would bring disputes in Beirut courts. *See* SA27-SA28 ¶¶ 4, 6-7; SA7-SA8 ¶¶ 20-22.

The New York court's ruling in *Malaeb v. Bankmed S.A.L.*, 2021 WL 1925638 (Sup. Ct. N.Y. Cnty. May 13, 2021), is instructive. There, the plaintiff

25

alleged that his transfers to and from Lebanese bank defendants "were effectuated through their New York correspondent accounts," *id.* at *6, before the banks refused to allow him "to withdraw or transfer his USD outside Lebanon," *id.* at *3. The court held that that "due process preclude[d] the exercise of personal jurisdiction over the banks" because they "could not have reasonably foreseen being sued in New York due to this routine correspondence activity." *Id.* at *8–9.

Finally, the traditional reasonableness factors make clear that the assertion of jurisdiction by a New York court would be improper. Being required to litigate in a foreign system—far from the relevant witnesses, documents, and Lebanese law experts—would impose significant burdens on Byblos, which is the "primary concern" in this analysis. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 263 (2017); *see, e.g.*, *AlbaniaBEG Ambient Sh.p.k. v. Enel S.P.A.*, 160 A.D.3d 93, 110 (1st Dep't 2018) (giving "significant weight" to "unique burdens" of foreign litigation). And, in similar suits, state and federal courts have consistently recognized that the New York forum—in stark contrast with Lebanon—has no clear interest in the resolution of a Lebanese banking dispute arising from Lebanon's financial crisis. *See Daou v. BLC Bank, S.A.L.*, 2021 WL 1338772, at *5 (S.D.N.Y. Apr. 9, 2021); *Malaeb*, 2021 WL 1925638 at *11-12; *Chaar*, 2022 WL 31104606 at *4; *Trans Atlantic Imaging S.A.L.*, 2021 WL 2435887 at *3. Lebanon "has a clear

overriding public policy interest in adjudicating these disputes" given the ongoing financial crisis. *Malaeb*, 2021 WL 1925638 at *11; *see also* SA24 ¶ 20; SA7 ¶ 19.

## II. *Forum Non Conveniens* Provides an Independent Basis for Dismissal.

Dismissal of Kreit's suit is also properly affirmed based on *forum non conveniens*. While the district court did not have cause to reach this argument, this Court has discretion to decide issues that were "raised, briefed, and argued in the District Court, but that were not reached there." *Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 418-19 (2d Cir. 2001); *see* ECF Nos. 39, 49, 53.

### A. The Parties' Mandatory Forum-Selection Clause Requires Dismissal as a Matter of Law.

Kreit cannot escape the mandatory nature of the forum-selection clause in his agreement with Byblos. *See Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. Of Tex.*, 571 U.S. 49, 60 (2013) (instructing that the "appropriate way to enforce a forum selection-clause pointing to . . . foreign forum is through the doctrine of *forum non conveniens*") (quoted in *Daou*, 2021 WL 1338772, at *3).

In Kreit's district court briefing, he acknowledged the clause, but argued that it employed an Arabic word best translated as "solely" instead of "exclusively" and that this rendered the clause merely permissive. A161-A162. It was Kreit's apparent and erroneous contention that "solely" and "exclusively" are not synonyms. A162. They are, of course, synonymous. *See* SA6-SA7 ¶¶ 16-18. Accordingly, this Court may recognize that, as a matter of law, the parties' forum-selection clause requiring

27

Kreit to bring suit in Beirut is mandatory.[9] That is, even under Kreit's translation, this Court should hold that the courts in Lebanon have exclusive jurisdiction to resolve this dispute.

### B. The Traditional Factors Support Dismissal.

Dismissal is warranted under the traditional multi-factor *forum non conveniens* analysis, which calls for (1) determining "the degree of deference properly accorded the plaintiff's choice of forum," (2) considering "whether the alternative forum proposed by the defendants is adequate," and (3) balancing "the private and public interests implicated in the choice of forum." *Aenergy, S.A. v. Republic of Angola*, 31 F.4th 119, 128 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 576 (2023) (quoting *Celestin v. Caribbean Air Mail, Inc*., 30 F.4th 133, 145 (2d Cir. 2022)).

First, minimal deference, if any, should be given to Kreit's choice of a non-home forum with no significant connection to this dispute. Kreit is a resident of Texas and has never claimed to reside in New York or to have any personal connection to New York. Courts give "little deference" where, as here, the plaintiff's "choice of forum was made for tactical purposes and not from a bona fide connection to th[e] district." *In re Fosamax Prods. Liability Litig*., 2009 WL 3398930, at *4

---

[9] While the traditional factors are reviewed for an abuse of discretion, this Court reviews *de novo* motions to dismiss based on a forum-selection clause. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014).

(S.D.N.Y Oct. 21, 2009); *see also, e.g., Elghossain*, 2023 WL 6390160, at *15 (dismissing under *forum non conveniens*, in part, because plaintiffs "identify no bona fide connection to New York"); *see generally Piper Aircraft Co. v Reyno*, 454 U.S. 235, 255-56 (1981) (explaining that assuming the forum has been chosen because it is "convenient" is "much less reasonable" when plaintiff is not from the forum).

Second, "the Lebanese judicial system provides an adequate alternative forum." *Elghossain*, 2023 WL 6390160, at *15; *see also, e.g.*, *Du Quenoy v. Am. Univ. of Beirut*, 828 F. App'x 769, 772–73 (2d Cir. 2020) (rejecting claims that Lebanon would be an inadequate forum and affirming dismissal for *forum non conveniens*); SA8-SA9 ¶¶ 23-25. Notably, Kreit has accessed the courts of Lebanon and has suits pending against Byblos in Beirut. *See supra* note 4; *see also* SA33 ¶¶ 24-25.

Third, Lebanon's strong interest in the dispute and the application of foreign law weigh heavily in favor of dismissal. Lebanon offers the most appropriate forum to interpret Lebanese legal documents and open questions of Lebanese law implicating, *inter alia*, the Lebanon Central Bank's authority to regulate the flow of currency across its borders and navigate the ongoing financial crisis. Any interest New York might have "pales in comparison" with Lebanon's "strong interest in regulating the conduct of banks within its borders." *LaSala v. UBS, AG*, 510 F. Supp.

2d 213, 229 (S.D.N.Y. 2007); *see, e.g.*, *Moussaoui*, 2023 WL 5977239 at \*9 (recognizing Lebanon's "unique, important public policy interest").

This Court's prior cases provide ample support for this conclusion. *See, e.g.*, *Alfadda v. Fenn*, 159 F.3d 41, 46 (2d Cir. 1998) (finding France had a "far greater interest" in litigation involving a "French-licensed bank" and a "challenge to a bank restructuring ordered and supervised by French banking authorities"); *Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 1002 (2d Cir. 1993) (recognizing Australia was preferable forum to litigate actions by Australian banks relating to one of the largest liquidations in Australian history); *see also, e.g.*, *Carlström v. Livförsäkring*, 2020 WL 7342753, at \*8 (S.D.N.Y. Dec. 14, 2020) (finding Swedish courts "best equipped" to decide "significant questions of Swedish law"); *Shin-Etsu Chem. Co., v. 3033 ICICI Bank Ltd.*, 9 A.D.3d 171, 178 (1st Dep't 2004) (recognizing foreign court's interest in "governing" banks' affairs to "[e]nsure uniformity and consistency in" practice and in "interpretation" of "banking statutes and laws").

## III. The District Court Did Not Abuse its Discretion by Denying Jurisdictional Discovery.

The district court did not abuse its discretion in denying Kreit's request for jurisdictional discovery. A239. This Court's precedents hold that a "district court" is "well within its discretion" to deny jurisdictional discovery where, as here, "the plaintiff ha[s] not made out a prima facie case for jurisdiction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007) (citing *Jazini,* 148 F.3d at 186); *see*

*Daou*, 42 F.4th at 133 n.6 (explaining that "a district court has wide latitude to determine the scope of discovery, . . . and is typically within its discretion to deny jurisdictional discovery when the plaintiff [has] not made out a prima facie case for jurisdiction") (citing *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 401 (2d Cir. 2009)).

Kreit insists that even if he did not make a *prima facie* showing that jurisdiction was proper, he "made a 'sufficient start' and should have been granted jurisdictional discovery." Pl's Br. 7-8. On this basis, Kreit urges this Court to order discovery and to hold that the district court's dismissal of the suit for lack of personal jurisdiction was "premature." *Id.* at 12.

There was nothing premature about the court's dismissal, however. While a district court's wide latitude with regard to discovery means that it *may* grant jurisdictional discovery where it finds that "a plaintiff's allegations make a sufficient start toward establishing personal jurisdiction," "if the plaintiff has failed to establish a prima facie case for personal jurisdiction, jurisdictional discovery is generally *not* granted." *Reed Int'l, Inc. v. Afghanistan Int'l Bank*, 657 F. Supp. 3d 287, 298 (S.D.N.Y. 2023) (emphasis added); *see also Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 18-19 (2d Cir. 2015) ("Where plaintiffs do not establish a prima facie case that the district court has jurisdiction over the defendant, the district court does not err in denying jurisdictional discovery."). In particular, "a

court is not obligated to subject a foreign corporation to discovery where the allegations of jurisdictional facts fail to state a basis for the exercise of jurisdiction or where a plaintiff's proposed discovery, if granted, would not uncover facts sufficient to sustain jurisdiction." *Reed Int'l, Inc.*, 657 F. Supp. 3d at 299 (internal citations and punctuation omitted); *see also Jazini*, 148 F.3d at 185-86 (holding that "conclusory non-fact-specific jurisdictional allegations" were insufficient to obtain jurisdictional discovery over foreign corporation); *see generally Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987) (recognizing "special" concerns related to discovery against foreign litigants).[10] Moreover, "discovery need not be granted to permit a fishing expedition for jurisdictional facts." *Reed Int'l, Inc.*, 657 F. Supp. 3d at 299; *see also*, *e.g.*, *Girl Scouts of U.S. v. Steir*, 102 F. App'x 217, 221 (2d Cir. 2004) (affirming denial of

---

[10] None of the cases cited by Kreit hold that a court *must* permit jurisdictional discovery upon a showing of a "sufficient start" but rather that a court has discretion to do so when the basis for jurisdiction is not frivolous. *See, e.g.*, *Allojet PLC v. Vantage Assocs.*, 2005 WL 612848, at *7 (S.D.N.Y. Mar. 15, 2005) (allowing jurisdictional discovery where plaintiff showed "a reasonable basis for the Court to assume jurisdiction"); *Stratagem Dev. Corp. v. Heron Int'l N.V.*, 153 F.R.D. 535, 537 (S.D.N.Y. 1994) (allowing jurisdictional discovery where plaintiff established "that their position [was] not frivolous"); *Ayyash v. Bank Al-Madina*, 2006 WL 587342, at *5 (S.D.N.Y. Mar. 9, 2006) (allowing jurisdictional discovery where plaintiff made a "threshold showing that there is some basis for the assertion of jurisdiction" and "facts that would support a colorable claim of jurisdiction"). In light of *Daou*, Kreit's jurisdictional argument does not rise above this standard to permit discovery.

jurisdictional discovery where plaintiffs had "no good faith basis for thinking discovery will yield information likely to establish personal jurisdiction"); *Holmes v. Apple Inc.*, 797 F. App'x 557, 560 (2d Cir. 2019) (affirming denial of jurisdictional discovery where plaintiff failed to "establish how further discovery could aid his case").

Here, the district court did not deny Kreit's motion for jurisdictional discovery *solely* on the ground that Kreit failed to make a *prima facie* showing, but also because Kreit "failed to establish a genuine issue of jurisdictional fact" and "failed to show how the information he hoped to obtain would bear on the critical issue for jurisdiction." A239 (cleaned up). The district court did not abuse its discretion in denying permission for Kreit to conduct a fishing expedition for jurisdictional facts. *See Reed*, 657 F.Supp.3d at 299; *see also Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 151 (S.D.N.Y. 2023) (denying jurisdictional discovery where plaintiff failed to provide "non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place").[11]

---

[11] In denying jurisdictional discovery, the district court in *Bayshore Cap. Advisors* noted that even if it had personal jurisdiction over the defendants "there [were] serious questions about whether the state law claims would survive on forum non conveniens grounds." 667 F. Supp. at 152 n.10. Here too, the strength of Byblos's *forum non conveniens* arguments further supports the district court's denial of jurisdictional discovery.

On appeal, Kreit claims to desire discovery of three categories of information: (1) the funds in Byblos's correspondent bank accounts; (2) Byblos's alleged "acts of soliciting investments in New York," and (3) Byblos's "purposeful invocation of New York Court's jurisdiction based in its use of its headquartered [sic] in New York for private loans." Pl's Br. 8. As discussed directly below, Kreit has not demonstrated that any of these requests are likely to yield information material to sustaining personal jurisdiction over Byblos in New York.

*First*, correspondent bank accounts are "not customer or transaction specific" and are instead used to "attend to the needs of [the bank's] customers in general." SA28 ¶ 8. The funds in Byblos's correspondent bank accounts in New York bear no relation to Kreit's claims. And Kreit's inability to transfer funds out of Lebanon into the United States has nothing to do with Byblos's maintenance of correspondent bank accounts in New York. Instead, the wrongdoing alleged by Kreit, just like the wrongdoing alleged by the Daous and other litigants, stems from the financial crisis in Lebanon. *See e.g.*, *Daou*, 42 F.4th 120; *Elghossain* 2023 WL 3005524; *Moussaoui*, 2023 WL 5977239; *Chaar*, 220 A.D.3d 479. No amount of discovery into correspondent bank transactions will alter the fact that Kreit's funds are located in Lebanon where he opened his Byblos account, executed contracts with Byblos, and has brought suit against Byblos.

*Second*, Kreit requests discovery regarding Byblos's "acts of soliciting investments in New York." Pl's Br. 8. This request is also meritless because, as discussed, a bank's advertising of accounts to potential customers in New York is insufficient to establish specific jurisdiction over Kreit's claims. *See Daou*, 42 F. 4th at 132 (recognizing that such advertising has no nexus to the underlying claims); *see also Elghossain*, 2023 WL 6390160 at *7 (same). So too here; particularly because there is no allegation that Kreit received such advertising in New York – a state where he does not reside.

*Third*, the requested discovery related to Byblos's alleged "purposeful invocation of New York's jurisdiction" is likewise incapable of establishing personal jurisdiction. Kreit suggests that Byblos is now subject to personal jurisdiction in this case because of a 2006 attempt by a separate *Belgian* entity related to Byblos to enforce a Belgian court judgment against a defendant in New York. *See Byblos Bank Eur., S.A. v. Sekerbank Turk Anonym Syrketi*, 40 A.D.3d 497 (1st Dep't 2007). Even if the Belgian entity's actions could be imputed to Byblos here (and they cannot), affirmatively appearing in one proceeding does not subject a party to personal jurisdiction in another unrelated matter, even in the same court. *See V&A Collection, LLC v. Guzzini Props., Ltd.*, 2021 WL 982461, at *6 (S.D.N.Y. Mar. 15, 2021) (collecting cases), *aff'd*, 46 F.4th 127 (2d Cir. 2022).

In the same vein, Kreit's request for information relating to a subordinated loan agreement entered into between Byblos and a Luxembourg bank, Bank of New York Mellon (Luxembourg) S.A. ("BNYM-Lux") in 2012 strains logic. Kreit makes no effort to explain how information regarding the loan would establish personal jurisdiction over Byblos in New York with respect to his claims here. Nor is discovery even necessary: The subordinated loan agreement is publicly available and establishes that Byblos contracted with BNYM-Lux, a public limited liability company incorporated under the laws of Luxembourg and maintaining offices in Luxembourg—*not* New York. *See Mitsubishi UFJ Inv. Servs. & Banking (Luxembourg) S.A. v. Byblos Bank S.A.L.*, No. 653915/2022, (Sup. Ct. N.Y. Cnty. Dec. 27, 2022), NYSCEF Doc. No. 5 at 3.[12]

In sum, Kreit has failed to "show how the information he hoped to obtain would bear on the critical issue for jurisdiction" A239. The district court did not abuse its broad discretion in denying jurisdictional discovery.

---

[12] The case caption reflects the fact that the agreement was assigned by BNYM-Lux to another entity in Luxembourg, Mitsubishi UFJ Investor Services & Banking (Luxembourg) S.A. in 2016.

## CONCLUSION

For the foregoing reasons, this Court should affirm the dismissal of this suit.


Dated: June 3, 2024    Respectfully submitted,



*/s/ Samantha L. Chaifetz*
Samantha L. Chaifetz
**DLA Piper LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
T: 202.799.4082
F: 202.799.5082

Neal F. Kronley
Caleb B. Roche
**DLA Piper LLP (US)**
1251 Avenue of the Americas
New York, NY 10020
(212) 335 4500

*Counsel for Defendant-Appellee*
*Byblos Bank S.A.L.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32 and Local Rule 32.1 because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 8626 words.

This brief also complies with the typeface and style requirements of Federal Rule of Appellate Procedure 32 because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: June 3, 2024

/s/ *Samantha L. Chaifetz*
Samantha L. Chaifetz

## CERTIFICATE OF SERVICE

I certify that on June 3, 2024, I served the foregoing Response Brief of Defendant-Appellee Byblos Bank S.A.L. on all counsel via the Court's ECF system.

Dated: June 3, 2024

/s/ *Samantha L. Chaifetz*
Samantha Chaifetz